KC4KGOMC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4          v.               18 CR 262 (VEC)
                              Telephone Conference
5   ARMANDO GOMEZ AND FABIO SIMON
    YOUNES ARBOLEDA,
6

7              Defendants.

8   ------------------------------x

9                             New York, N.Y.
                             December 4, 2020
10                           2:00 p.m.

11   Before:

12               HON. VALERIE E. CAPRONI,

13                               District Judge

14                     APPEARANCES

15   AUDREY STRAUSS,
        Acting United States Attorney for the
16        Southern District of New York
    MATTHEW LAROCHE
17        Assistant United States Attorney

18   MARGARET M. SHALLEY
        Attorney for Defendant Gomez
19

20   DONALD YANNELLA
        Attorney for Defendant Younes Arboleda

21

22

23

24

25

1    (The Court and all parties appearing telephonically)

2    THE COURT:  Let me remind you all of the rules of a

3    telephone conference:  Please identify yourself each time

4    before you speak.  When you hear the bell that indicates

5    someone has come or left, please stop talking long enough for

6    me to make sure that the court reporter is on the line.  And if

7    you're in an area where there's ambient noise, please mute your

8    phone when you're not speaking.

9    So, first, let me start by making sure:  I think we've

10   got letters to this effect, but, Mr. Yannella, are you waiving

11   your client's presence for purposes of this conference?

12   MR. YANNELLA:  Yes.

13   THE COURT:  How about you, Ms. Shalley?

14   MR. SHALLEY:  Yes, your Honor.

15   THE COURT:  Okay.

16   Mr. Laroche, we've still got one defendant at large;

17   is that correct?

18   MR. LAROCHE:  That's correct, your Honor.

19   THE COURT:  Is he being actively looked for?

20   MR. LAROCHE:  Your Honor, we sent an extradition

21   package to Colombia immediately after the indictment in this

22   case.  That defendant, Jesus Santrich, was detained at the time

23   by the Colombians.  The Colombians ended up releasing him, and,

24   at this point, our understanding is that he's located somewhere

25   along the Colombian and Venezuelan border.  So we're taking all

1   active steps to try to apprehend him, but, at this point, I

2   don't have another update as to his status.

3           THE COURT:  Okay.

4           What's the status of discovery, Mr. Laroche?

5           MR. LAROCHE:  Yes, your Honor.

6           With respect to both defendants, we are substantially

7   complete with discovery except for one bit of forensics.  So

8   the discovery that is complete at this point includes:  All

9   audio and video recordings taken by the confidential sources,

10  which is the core of the case; draft translations related to

11  those recordings; materials from an MLAT; some DA reports and

12  lab reports and other forensics reports.

13          There is the one exception that I mentioned, which we

14  believe will be resolved by next week, that has to do with

15  forensic devices that were seized in Columbia pursuant to

16  search warrant.  Those devices are located in Miami.  We've

17  been working with the agents to get copies of those devices up

18  here for production.  As of today, I believe the agents have

19  said those devices are on their way via mail, the actual

20  extractions to those devices.  So we expect that those will be

21  produced over to defense counsel by next week.

22          THE COURT:  Okay.

23          How are the defendants doing on access to the

24  discovery and their ability to review it?

25          Mr. Yannella?

1    MR. YANNELLA:  Your Honor, my client has not yet

2    received the discovery in the jail, I don't believe.  And I

3    wanted to raise this issue, your Honor, because I'm concerned,

4    from past experience, that there might be some difficulty in

5    playing these recordings on the computer in the Westchester

6    County Jail.  Maybe the prosecutors can speak more fully to

7    that and tell us whether a discovery coordinator might be

8    appropriate for the purpose of converting these calls into a

9    format that can be played on the computers in the jail.

10    THE COURT:  Okay.  Tell you what, that sounds like the

11    sort of conversation that you need to have with each other and

12    let me know if there's a problem and there's something that I

13    need to do.  But, just generally, has the discovery been

14    provided to the Westchester County Jail?

15    MR. LAROCHE:  It has not yet --

16    THE COURT:  That was Mr. Laroche, right?

17    MR. LAROCHE:  Yes.  I'm sorry, your Honor.

18    THE COURT:  Okay.

19    When do you expect to get it up to the Westchester

20    County Jail?

21    MR. LAROCHE:  We expect it to be there sometime early

22    next week.

23    THE COURT:  Okay.

24    So talk to each other about whether there are going to

25    be any difficulties, after the client gets the information,

KC4KGOMC

1  with him being able to actually review it up there.  If there's

2  a problem, let me know.  And, Mr. Yannella, let me know sooner

3  rather than later, and preferably with a proposed resolution to

4  the problems that your client is having.

5          MR. YANNELLA:  Yes, your Honor.  We didn't mean to

6  just present it to you in the first instance.  I had already

7  exchanged some emails in the background about this.  But we

8  will look into it, and if we're asking you to do something, we

9  will propose a resolution.  Thank you.

10          THE COURT:  Okay, okay, terrific.

11          And, Ms. Shalley, where is your client?

12          MR. SHALLEY:  He's in Valhalla also.

13          THE COURT:  Okay.  And how is he doing?  Does he have

14  the discovery?

15          MR. SHALLEY:  He does have the discovery.  I believe

16  he got it at the end of the summer, approximately mid-August.

17  He's been reviewing it.  He hasn't said that there's been a

18  problem with the recordings, but the problem we're having is,

19  he's reviewing the discovery.

20          The problem we're having is more that, with the

21  videoconferences with Valhalla, you can only have one person on

22  the video, so the interpreter has been on a phone and Mr. Gomez

23  is just having a really hard time hearing, which I think

24  partially is because he has a hearing problem — he's in his

25  mid-seventies — and partially because of the setup.

1    So, based upon letters that Mr. Yannella wrote and

2  that I then basically copied, I also wrote a letter to the

3  warden asking if it was possible for us to do phone calls where

4  he could call me without the calls being monitored, with an

5  interpreter, because that would make it a hundred times easier

6  to go through the information with him.  I've called the warden

7  three or four times over the past two weeks.  He hasn't called

8  me back yet, but I'm hoping that that works out because that

9  would make it a lot easier to review.

10    The additional discovery that's coming up from Florida

11  is, I believe, two laptops and three cell phones.  They did

12  belong to Mr. Gomez, so I believe most of that discovery is

13  going to relate to him.

14    THE COURT:  Okay.

15    So, Mr. Laroche, can you intervene with the Valhalla

16  facility to make sure that this problem gets worked through, so

17  that the attorneys can actually have a meaningful ability to

18  communicate with their clients?

19    MR. LAROCHE:  Yes, your Honor.

20    THE COURT:  Okay.

21    If that doesn't work, Mr. Yannella and Ms. Shalley,

22  both of you, if this doesn't get worked out in the next couple

23  of weeks, let me know because one way to work it through is

24  just to enter an order.  I presume that the warden would comply

25  with my order, but I'd prefer not to do that; I'd prefer for

1   this to get worked out in the ordinary course so that you can

2   have a meaningful ability to communicate with your clients.

3            So --

4            MR. YANNELLA:  Judge?

5            THE COURT:  Yes.  Mr. Yannella?

6            MR. YANNELLA:  Yes, Donald Yannella.

7            If I may interject, I have made some progress along

8   these lines.  I won't put it on the record right now, but I'll

9   share the information and the contact information with

10  Ms. Shalley and the prosecutors.

11           THE COURT:  Terrific, I like good news, Mr. Yannella,

12  particularly on a Friday afternoon.

13           MR. YANNELLA:  Okay.

14           THE COURT:  So, all things being considered,

15  considering the fact that Mr. Yannella is new to the case,

16  there still is a substantial amount of discovery that needs to

17  be reviewed, et cetera, and given the fact that it seems

18  unlikely that we're going to have any meaningful number of

19  trials in the early part of next year, my inclination is to set

20  a status conference maybe in late March, in the hopes that by

21  that point we have a better sense of when we're going to be

22  somewhere back to normal in terms of trial schedules, and then

23  set a trial schedule at that point.  And by that point also, we

24  may know whether the last defendant, the guy who's on the

25  Venezuela-Colombian border, is going to be joining us in this

1    case or not.

2           So, is there any objection to that as a way of

3    proceeding?  Mr. Laroche?

4           MR. LAROCHE:  No, your Honor.  Thank you.

5           THE COURT:  Ms. Shalley?

6           MR. SHALLEY:  No, your Honor.  Thank you.

7           THE COURT:  Mr. Yannella?

8           Mr. Yannella?

9           MR. YANNELLA:  No, your Honor.  I'm sorry, I had it on

10   mute.

11          THE COURT:  That's okay.

12          MR. YANNELLA:  No, your Honor.

13          THE COURT:  So I'm going to exclude time until our

14   next status conference, which I will set for March the 30th.

15   Actually, let's do it on April 2nd.  April 2nd at 2:30.

16          And assuming that we are in a better place with COVID

17   by that point, so that there is at the end of that tunnel not a

18   freight train coming our way but instead hope of actually

19   normal trials, my plan would be to set a trial schedule at that

20   point.

21          Okay?  Anything further from the government,

22   Mr. Laroche?

23          MR. LAROCHE:  No, your Honor.

24          THE COURT:  Ms. Shalley?

25          MR. SHALLEY:  No, your Honor.

1          THE COURT:  Mr. Yannella?

2          MR. YANNELLA:  Nothing further, your Honor.

3          THE COURT:  All right.  Thanks, everybody.  Have a

4    wonderful weekend.

5          MR. LAROCHE:  Thank you.  You too.

6          MR. SHALLEY:  Have a nice weekend.

7          MR. YANNELLA:  Thank you.

8                              *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25